# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DEBORAH COTTER,**
*individually, and as representative of a class of participants and beneficiaries, on behalf of the Matthews International Corporation 401(k) Plan,*

    **Plaintiff,**

    v.                          Case No. 20-CV-1054-WCG-SCD

**MATTHEWS INTERNATIONAL CORPORATION,**

**THE BOARD OF DIRECTORS OF MATTHEWS INTERNATIONAL CORPORATION,** and

**PENSION BOARD OF MATTHEWS INTERNATIONAL CORPORATION,**

    **Defendants.**

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Deborah Cotter, a participant in the Matthews International Corporation 401(k) Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against Matthews International Corporation, the Board of Directors of Matthews International Corporation, and the Pension Board of Matthews International Corporation (collectively, "Matthews"). United States District Judge William C. Griesbach has referred the case to me to address any motions. This report and recommendation addresses Matthews' motion to dismiss Cotter's second amended complaint. Because Cotter has failed to plausibly allege that the defendants breached their

fiduciary duties, I recommend that the court grant the defendants' motion. Moreover, because Cotter has already been given two chances to amend, and because she did not seek leave to amend again in response to the defendants' motion, I recommend that the court dismiss Cotter's claims with prejudice.

**BACKGROUND**

Matthews International Corporation offers its employees retirement benefits via the Matthews International Corporation 401(k) Plan. 2d Am. Compl. ¶ 5, ECF No. 50. The plan is a "defined contribution" pension plan under 29 U.S.C. § 1002(34), meaning that the corporation's contributions to the payment of plan costs is guaranteed but the pension benefits are not. *Id.* ¶ 30. The pension board is the plan administrator of the plan. *Id.* ¶ 28. Since 2014, the plan has received recordkeeping and administrative services from PNC and Wells Fargo. *Id.* ¶ 72. In 2018, the plan had more than $300 million in assets and over 5,000 participants, making it one of the largest defined contribution plans in the nation. *Id.* ¶ 32.

Cotter worked in customer service for Matthews International from January 2018 until June 2020 and is a participant in the plan. 2d Am. Compl. ¶¶ 20–21. In July 2020, Cotter filed suit individually and as representative of a putative class of plan participants and beneficiaries against Matthews International, its board of directors, its pension board, and unnamed members. *See* Compl., ECF No. 1. Cotter filed an amended complaint in November 2022— her second amended complaint—alleging four causes of action against Matthews International, its board of directors, and its pension board. The main thrust of the second amended complaint is that Matthews breached its fiduciary duties under ERISA beginning in July 2014. The first two causes of action assert that Matthews breached its duty of prudence regarding recordkeeping and administrative fees (Count I) and investment management fees

(Count II). The last two causes of action assert that Matthews failed to adequately monitor other fiduciaries with respect to the plan's recordkeeping fees (Count III) and investment fees (Count IV).

Matthews has moved to dismiss all four claims with prejudice for failure to state a claim upon which relief can be granted. *See* Defs.' Mot., ECF No. 51; Defs.' Br., ECF No. 52. In response, Cotter abandoned one of her investment-fee theories. *See* Pl.'s Resp. 10 n.3, ECF No. 55. Matthews' motion to dismiss the remaining claims is fully briefed and ready for resolution. *See* Defs.' Reply, ECF No. 58.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint must "allege[] facts that show the claim is 'plausible on its face.'" *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha*, 947 F.3d at 469 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha*, 947 F.3d at 469 (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). However, courts "need not accept as true . . . unsupported conclusory factual allegations." *Divane v. Northwestern Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) (quoting *Yeftich*, 722 F.3d at 915), *vacated*, *Hughes v. Northwestern Univ.*, 142 S.

3

Ct. 737 (2022) ("*Hughes I*")). Courts also may "ignore any facts alleged in the complaint that undermine the plaintiff's claim." *Divane*, 953 F.3d at 987 (quoting *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007)).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Id.* "Because 'the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, [] courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.'" *Albert*, 47 F.4th at 577 (quoting *Hughes I*, 142 S. Ct. at 742). As such, the Seventh Circuit has held that, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citing *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)).

## DISCUSSION

Cotter contends that Matthews breached its fiduciary duties concerning certain plan expenses and investments. To state a breach of fiduciary duty claim under ERISA, "a plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Albert*, 47 F.4th at 579 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). The first and third elements are not at issue here. Rather, Matthews insists that Cotter has failed to plausibly plead that the named defendants breached their duty of prudence and duty to monitor other fiduciaries.

## I. Duty of Prudence Claims

ERISA "requires plan fiduciaries to act prudently when managing an employee benefit plan." *Albert*, 47 F.4th at 578 (citing 29 U.S.C. § 1104(a)(1)(B)). A plan fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting 29 U.S.C. § 1104(a)(1)). As the Eighth Circuit explained in *Matousek v. MidAmerican Energy Co.*, "[t]he process is what ultimately matters, not the results." 51 F.4th 274, 278 (8th Cir. 2022) (citing § 1104(a)(1)(B)).

The duty of prudence includes "a continuing duty to monitor . . . investments and remove imprudent ones." *Hughes II*, 63 F.4th at 626 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) ("*Tibble I*"). "This continuing duty to monitor is a subset of the duty of prudence . . . and includes two related components." *Hughes II*, 63 F.4th at 626. "First, the duty of prudence requires a plan fiduciary to systematically review its funds both at the initial inclusion of a particular fund in the plan and at regular intervals to determine whether each is a prudent investment." *Id.* (citing *Tibble I*, 575 U.S. at 529). "Second, the duty of prudence requires a plan fiduciary to 'incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship.'" *Hughes II*, 63 F.4th at 627 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) ("*Tibble II*")).

Here, Cotter asserts that Matthews breached its duty of prudence by authorizing the plan to pay unreasonably high fees for recordkeeping and administrative services and by offering needlessly expensive investment options.

## A. Recordkeeping and administrative fees (Count I)

Cotter maintains that, during the putative class period, Matthews paid too much to its recordkeepers, PNC and Wells Fargo, and failed to timely remove them. She doesn't know what process Matthews used to select, retain, or determine the fees paid to PNC and Wells Fargo. Instead, Cotter says we should infer an imprudent decision-making process from Matthews' failure to effectively solicit quotes or competitive bids from PNC, Wells Fargo, and other recordkeepers and from Matthews' failure to leverage its substantial bargaining power to negotiate a lower fee. *See* 2d Am. Compl. ¶¶ 10, 31, 41, 90.

To support this theory, Cotter compares publicly available data for the Matthews International plan with thirteen allegedly comparable plans that are supposedly prudent when it comes to recordkeeping fees. *See* 2d Am. Compl. ¶¶ 88–116. The comparator plans had between about 500 to 10,000 participants, had total assets ranging from about $13 million to $2.1 billion, and paid a total annual recordkeeping fee of $33 to $73 per plan participant:

**Comparable Plans' [Recordkeeping & Administrative] Fees Based on Publicly Available Information from Form 5500**

| Plan | Participants | Assets | RK&A Price | RK&A Price /pp | Recordkeeper |
|---|---|---|---|---|---|
| Brown Rudnick Llp 401K Profit Sharing Plan A | 508 | $100,407,634 | $29,785 | $59 | Schwab |
| Compass Health, Inc. 401(K) Profit Sharing Plan | 611 | $13,172,474 | $37,127 | $61 | Great-West |
| HRL Retirement Savings Plan For Non-Bargained Employees | 625 | $155,081,708 | $35,694 | $57 | Vanguard |
| The Taubman Company And Related Entities Employee Retirement Savings Plan | 679 | $144,649,416 | $49,446 | $73 | Vanguard |
| **Matthews Average Fee** | **3,814** | **$188,990,815** | **$474,479** | **$124** | **PNC and Wells Fargo** |
| Hitachi Vantara Corporation Retirement And Savings Program | 3,890 | $680,441,899 | $174,568 | $45 | Fidelity |

| | | | | | |
|---|---|---|---|---|---|
| The Boston Consulting Group, Inc. Employees' Profit Sharing Retirement Fund | 4,369 | $421,208,989 | $185,805 | $43 | Vanguard |
| Healthfirst Profit Sharing 401(K) Plan | 4,950 | $227,721,800 | $201,889 | $41 | Vanguard |
| Genesis Health System Retirement Savings Plan | 6,260 | $231,793,794 | $325,894 | $52 | Transamerica |
| St. Luke's Health Network 403(B) Plan | 7,142 | $241,600,647 | $333,578 | $47 | Transamerica |
| Memorial Health System Defined Contribution Retirement Savings Plan | 7,318 | $221,242,194 | $385,754 | $53 | Transamerica |
| Waste Connections, Inc. 401k Profit Sharing Plan | 7,923 | $332,567,264 | $455,853 | $58 | Voya |
| Centerpoint Energy Savings Plan | 9,802 | $2,108,802,293 | $442,946 | $45 | Voya |
| Republic National 401(K) Plan | 9,922 | $671,989,837 | $324,171 | $33 | Great-West |

*Id.* ¶ 94. Cotter indicates that she based her calculations "on 2018 Form 5500 information or the most recent Form 5500 if 2018 [was] not available." *Id.*[1] By contrast, from 2014 through 2018, the Matthews International plan averaged about 4,000 participants, nearly $200 million in total assets, and a total annual recordkeeping fee of $124 per plan participant:

| Recordkeeping and Administration (RK&A) Fees | | | | | | |
|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | *Average* |
| **Participants** | 2,847 | 3,003 | 2,866 | 5,124 | 5,231 | *3,814* |
| **Est. RK&A Fees** | $588,093 | $545,340 | $569,058 | $343,737 | $326,166 | *$474,479* |
| **Est. RK&A Per Participant** | $207 | $182 | $199 | $67 | $62 | *$124* |

*Id.* ¶¶ 92, 94. Based on a trend line constructed from this data, Cotter alleges that "a hypothetical prudent plan fiduciary would have paid on average an effective annual [recordkeeping] fee of around $49 per participant, if not lower":

---

[1] "ERISA and the Internal Revenue Code require the annual submission of Form 5500s for employee benefit plans." *Albert*, 47 F.4th at 579. Cotter does not indicate which plans did not have a 2018 Form 5500 available or which year was used for those plans.



*Id.* ¶¶ 95, 99. According to Cotter, the unreasonably excessive recordkeeping fees paid by the Matthews International plan cost its participants nearly $2 million. *See id.* ¶¶ 100–04.

Matthews argues that the Seventh Circuit's decision in *Albert* requires dismissal of Cotter's recordkeeping fees claim. In *Albert*, the Seventh Circuit affirmed the dismissal of a similar recordkeeping claim that relied on a price comparison of fees charged to other plans. *See Albert*, 47 F.4th at 579. The court first reiterated its prior holdings "that the cheapest investment option is not necessarily the one a prudent fiduciary would select," *id.* (citing *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011), and "that a failure to regularly solicit quotes or competitive bids from service providers" does not, as a matter of law, breach the duty of prudence, *Albert*, 47 F.4th at 579 (citing *Divane*, 953 F.3d at 990–91).

Because at the time *Hughes* was still pending on remand from the Supreme Court, the court looked elsewhere for guidance. It relied primarily on *Smith v. CommonSpirit Health*, a

case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)). The Seventh Circuit determined that the complaint in its case did not provide "'the kind of context that could move [the recordkeeping] claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Id.* Nevertheless, the court emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Dudenhoeffer*, 573 U.S. at 425).

After the parties in our case briefed Matthews' motion to dismiss, the Seventh Circuit issued its decision in *Hughes II*. The court clarified the pleading standard for ERISA duty-of-prudence claims, explaining that "a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes II*, 63 F.4th at 630 (citing *Hughes I*, 142 S. Ct. at 742). "How wide that range of reasonableness is will depend on 'the circumstances . . . prevailing at the time the fiduciary acts.'" *Hughes II*, 63 F.4th at 630 (quoting *Dudenhoeffer*, 573 U.S. at 425). The court also reiterated that "[t]he discretion accorded to an ERISA fiduciary 'will necessarily be context specific.'" *Id.* And it further explained that "the duty of prudence includes a continuing duty to monitor plan expenses and 'incur only costs that are reasonable in amount and appropriate' with respect to the services received." *Hughes II*, 63 F.4th at 631 (quoting *Tibble II*, 843 F.3d at 1197).

Applying that "newly formulated pleading standard," the *Hughes II* court reversed the dismissal of an excessive recordkeeping fees claim. *Hughes II*, 63 F.4th at 630–34. The court distinguished *Albert*, noting that the complaint in its case alleged that "the quality or type of

9

recordkeeping services provided by competitor providers [were] comparable to that provided by" the plan's recordkeepers. *Hughes II*, 63 F.4th at 632. The court further noted that the complaint alleged that recordkeeping services for all "jumbo plans . . . are fungible and that the market for them is highly competitive." *Id.* In other words, unlike the plaintiffs in *Albert*, the plaintiffs in *Hughes II* provided the required context to allege that their plan's recordkeeping fees "were excessive relative to the recordkeeping services rendered." *Id.* (citing *Smith*, 37 F.4th at 1169).

Like the complaint in *Hughes II*, the operative complaint here includes the allegations missing from the complaint in *Albert* about the quality or type of services provided. Specifically, the second amended complaint alleges that PNC and Wells Fargo provided plan participants standardized recordkeeping and administrative services that all large plans— those with between $250 million and $500 million in assets—receive from their recordkeepers. *See* 2d Am. Compl. ¶¶ 25, 39–44, 51–53. It also alleges that recordkeepers for all large plans provide more or less the same level and quality of service and that any minor variations do not materially affect the fees charged. *See id.* ¶¶ 39–53. Thus, according to the second amended complaint, the market for recordkeeping services is highly price-competitive for large plans, such that plans with more participants generally can negotiate a lower per-participant rate. *See id.* ¶¶ 54–62. Given these alleged facts, Cotter asserts that the Matthews International plan's fees were excessive relative to the services received, as the plan could have obtained the same recordkeeping services for less from other, similar recordkeepers. *See id.* ¶¶ 88–116.

Pleading that recordkeeping fees were too high, however, is not sufficient to state an ERISA duty-of-prudence claim. Rather, the plaintiff must "plead[] sufficient facts to render it plausible that [the plan] incurred *unreasonable* recordkeeping fees." *Hughes II*, 63 F.4th at 631

(emphasis added). In *Matousek*, the Eighth Circuit explained that "[t]he key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low.'" 51 F.4th at 278 (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)). The Seventh Circuit embraced that rule in *Albert*, as it relied on the same *Davis* quote to affirm the dismissal of two duty-of-prudence claims. 47 F.4th at 581–82 (quoting *Davis*, 960 F.3d at 484). And in *Hughes II* the court found it crucial that the plaintiffs had alleged that the proposed alternative fee was reasonable "based on the services provided by existing recordkeepers and the Plans' features." 64 F.4th at 632; *see also Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, 2022 U.S. Dist. LEXIS 175972, at *13 (N.D. Ill. Sept. 28, 2022) ("To plead sufficient facts to raise an inference of a deficient decision-making process for recordkeeping services, parties must use a 'sound basis for comparison—a meaningful benchmark.'") (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

Unlike the factual allegations in *Hughes II*, the alleged facts in this case do not render it plausible that the proposed alternative fee—here $49 per participant—was a reasonable recordkeeping fee. Cotter arrived at that $49 figure from a trend line based on the fees paid by thirteen other plans. She says that recordkeeping services essentially are the same for all "large" 401(k) plans, which she defines as plans with $250 million to $500 million in assets. But the average asset size of the Matthews International plan was less than $200 million, and only two of the thirteen comparator plans fit within Cotter's definition of a large plan. The complaint, however, does not contain any allegations about the recordkeeping services of plans with fewer than $250 million in assets or plans with more than $500 million in assets.

11

Similarly, the so-called comparators vary significantly in size. The smallest plans had just 508 participants and barely $13 million in assets; the Matthews International plan averaged about 4,000 participants and nearly $200 million in assets; and the largest plans had nearly 10,000 participants and over $2 billion in assets. Because the comparator plans are not similarly sized, Cotter's trend line cannot be used to derive a reasonable fee, and she therefore has no basis to allege that the plan's recordkeeping fees were excessive relative to the services rendered.[2] *See Miller v. Packaging Corp. of Am., Inc.*, No. 1:22-cv-271, 2023 WL 2705818, 2023 U.S. Dist. LEXIS 55337, at *18 (W.D. Mich. Mar. 30, 2023) (dismissing a similar recordkeeping fees claim in part because the plaintiff's comparators "varied greatly in terms of the number of participants and the amount of assets held"); *Sigetich v. Kroger Co.*, No. 1:21-cv-697, 2023 WL 2431667, 2023 U.S. Dist. LEXIS 40359, at *23–24 (S.D. Ohio Mar. 9, 2023) (same); *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 WL 1782611, 2023 U.S. Dist. LEXIS 19172, at *35–36 (S.D. Ind. Feb. 3, 2023) (same); *Mator v. Wesco Distrib. Inc.*, No. 2:21-CV-00403-MJH, 2022 WL 3566108, 2022 U.S. Dist. LEXIS 147802, at *24–25 (W.D. Pa. Aug. 18, 2022) (same).

In addition to choosing plans that varied widely in size, Cotter did not use a consistent methodology for determining the plans' recordkeeping fees. She compares the average fee the Matthews International plan paid over five years (2014 to 2018) with the fees paid by the comparator plans in just one year (usually 2018). Thus, contrary to Cotter's allegations, she has not made an apples-to-apples comparison. This inconsistent methodology is especially problematic given that the Matthews International plan significantly reduced its

---

[2] Cotter's graph also contradicts her allegation that more participants means a lower recordkeeping fee. As just one example, the Healthfirst plan had nearly 5,000 participants and paid $41 in recordkeeping fees per participant; in contrast, the Waste Connections plan had almost 8,000 participants and paid $58. *See* 2d Am. Compl. ¶¶ 94–97.

recordkeeping fees over those five years. For example, in 2014, the plan paid $207 in recordkeeping fees per plan participant; however, in 2018, its fees were only $62 per participant. That latter figure was less than one of the other thirteen comparator plans in the same year and within the range of fees paid by several others. In other words, the obvious alternative explanation is that the fiduciaries' process resulted in lower recordkeeping fees throughout the relevant time period. *See Hughes II*, 63 F.4th at 629 (explaining "that something 'more' is necessary to survive dismissal when there is an obvious alternative explanation that suggests an ERISA fiduciary's conduct falls within the range of reasonable judgments a fiduciary may make based on her experience and expertise") (citation omitted). Because Cotter has not pleaded a sound basis for comparison, she has not created a plausible inference that the plan's decision-making process was flawed.[3] *See Matousek*, 51 F.4th at 279 (affirming the dismissal of an excessive recordkeeping fees claim because the plaintiff failed "to make a like-for-like comparison"); *see also Jones v. Dish Network Corp.*, No. 22-cv-00167-CMA-STV, 2023 WL 2796943, 2023 U.S. Dist. LEXIS 52890, at *26–28 (D. Colo. Jan. 31, 2023) (recommending to dismiss an excessive recordkeeping fees claim where the plaintiff compared the average fee paid by the plaintiff's plan with the fees paid by comparator plans in one selected year), *adopted*, 2023 WL 2644081, 2023 U.S. Dist. LEXIS 51823 (D. Colo. Mar. 27, 2023).

Without the comparison to fees paid by other plans, Cotter simply alleges in conclusory fashion that the Matthews International plan paid too much for the same quality of services and failed to regularly solicit competitive bids for recordkeeping fees. Those allegations, however, are not enough to cross the line from possibility to plausibility.

---

[3] The lack of a meaningful benchmark distinguishes this case from *Coyer*, the case Cotter primarily relies upon.

### B. Investment management (Count II)

Cotter maintains that the named defendants also breached their duty of prudence by offering high-cost funds. *See* 2d Am. Compl. ¶¶ 7–10, 156–74. As with the recordkeeping claim, Cotter compares the investment options the Matthews International plan selected to thirty-five allegedly comparable and prudent alternative investment options. *Id.* ¶ 160. Based on that comparison, Cotter asserts that, during the putative class period, "the investment options selected by the Plan fiduciaries were 513.52% more expensive than prudent alternative and less expensive options covering the same asset category and same investment approach." *Id.* ¶ 162. She further asserts that the expense ratios of the plan's investment options "were more expensive by significant multiples of comparable actively and passively managed, alternative funds in the same investment style." *Id.* ¶ 168. According to Cotter, Matthews' failure to consider materially similar but cheaper investment options cost its plan participants more than $2 million from 2014 through 2018. *Id.* ¶ 172.

In *Albert*, the Seventh Circuit affirmed the dismissal of a nearly identical investment management claim. The court noted that "[t]he fact that actively managed funds charge higher fees than passively managed funds is ordinarily not enough to state a claim because such funds may also provide higher returns." *Albert*, 47 F.4th at 581 (citing *Smith*, 37 F.4th at 1165). Again relying on the Sixth Circuit's decision in *Smith*, the Seventh Circuit determined that the Supreme Court's decision in *Hughes I* "does not require a radically different approach to claims alleging excessive investment-management fees." *Albert*, 47 F.4th at 581–82. The court held that the plaintiff's allegations—that "Defendants failed to consider materially similar and less expensive alternatives to the Plan's investment options"—were "threadbare"

and that the complaint did not include "more detailed allegations providing a 'sound basis for comparison.'" *Id.* at 582 (quoting *Meiners*, 898 F.3d at 822).

Cotter's investment management claim relating to Matthews' selection of high-cost investment options is indistinguishable from the investment management claim dismissed in *Albert*. *Compare* the operative complaint here, ¶¶ 156–74, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 169–96. Like the plaintiff in *Albert*, Cotter relies on tables comparing the plan's actively managed investment funds to cheaper alternatives. However, the difference in cost alone is not enough to support a duty-of-prudence claim, and the complaint does not contain any more detailed—i.e., nonconclusory—allegations providing a sound basis to compare the plan's investment options with the supposedly prudent alternatives. Indeed, the second amended complaint contains almost the exact same threadbare allegation deemed insufficient in *Albert*: "Defendants failed to consider materially similar but cheaper alternatives to the Plan's investment options." ¶ 168.

Cotter's attempts to prop up her investment management claim are unavailing. She first argues that her comparison is sound, as her chart contrasts seventeen actively managed funds with actively managed target-date funds. The second amended complaint, however, does not allege that the comparator target-date funds were actively managed or put forth any nonconclusory allegations establishing that the comparator funds were suitable alternatives. *See Coyer*, 2022 U.S. Dist. LEXIS 175972, at *16–17 (dismissing a similar investment management claim because the plaintiff's complaint did not plausibly plead "the active-management component of their comparison"). Moreover, by focusing on only seventeen of the thirty-five comparisons, Cotter tacitly admits that she contrasts actively managed funds to

15

passively managed funds for the other eighteen, which the Seventh Circuit deemed insufficient in *Albert*.

Cotter also argues that her investment management claim should survive under the Eastern District of Michigan's recent decision in *Parker v. GKN North America Services, Inc.*, No. 21-12468, 2022 WL 3702072, 2022 U.S. Dist. LEXIS 154358 (E.D. Mich. Aug. 26, 2022). In *Parker*, the court held that, while an ERISA breach-of-prudence claim based on investigating and selecting funds could be "sufficient when a plaintiff can show that the fund selection process itself favored higher-fee funds, it is *insufficient* when plaintiff claims only that other, lower-cost funds were (or are) available in the market." 2022 U.S. Dist. LEXIS 154358, at *7–8 (citations omitted). The second amended complaint here does not contain any facts suggesting that the Matthews International plan's selection process favored high-cost funds other than alleging that it did not select the lower-cost alternatives. That allegation is insufficient under *Parker* to raise an inference of imprudence. Moreover, the court in *Parker* noted that the plaintiffs provided data showing that their comparator funds "were significantly cheaper *and consistently outperformed the Plan funds*." *Id.* at *10. In contrast, the operative complaint in our case does not contain any nonconclusory allegations about the comparator funds' performance. *Parker* therefore does not support Cotter's investment management claim.

In sum, Cotter has failed to plead enough facts to raise an inference of imprudence based on the selection and retention of high-cost investment options.

## II. Duty to Monitor Claims

In Counts III and IV, Cotter asserts that Matthews breached its duty to monitor other fiduciaries with respect to recordkeeping and administrative service fees and investment

management. *See* 2d Am. Compl. ¶¶ 208–21. Cotter concedes that her duty-to-monitor claims are wholly derivative of her duty-of-prudence claims. *See* Pl.'s Resp. at 23. Because I recommend the court dismiss Cotter's duty-of-prudence claims, I recommend the derivative duty-to-monitor claims be dismissed as well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion to dismiss the second amended complaint, ECF No. 51. Matthews argues for dismissal with prejudice given that Cotter has already been afforded two opportunities to amend her complaint. Cotter did not respond to that argument in her brief in opposition to the defendants' motion. Because Cotter has already amended her complaint twice, and because she has not requested leave to amend again, I recommend that this action be **dismissed with prejudice**.

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 9th day of August, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge