UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

DEBORAH COTTER, individually,
and as representative of a Class of
Participants and Beneficiaries, on Behalf
of the Matthews International Corporation
401(k) Plan,

      Plaintiff,                                Case No. 20-cv-1054-WCG-SCD

      v.

MATTHEWS INTERNATIONAL
CORPORATION *et al.*,

      Defendants

**PLAINTIFF'S PARTIAL OBJECTION TO MAGISTRATE'S
REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION TO DISMISS, AND IN THE ALTERNATIVE,
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Plaintiff, Deborah Cotter ("Plaintiff"), by and through her counsel, Walcheske & Luzi, LLC, respectfully files this partial objection in response to the Magistrate's Report and Recommendation to Grant Defendants' Motion to Dismiss the Second Amended Complaint ("SAC"). (ECF No. 63) ("*Magistrate Rep.*").[1] Plaintiff believes that based on her allegations in the SAC and the Magistrate's reasoning in two previous, parallel cases, Plaintiff's allegations concerning comparator retirement plans support an inference that Mathews International Plan participants paid higher recordkeeping and administrative ("RKA") fees than the average retirement plan participants fees. However, to the extent that the Court agrees with the Magistrate Judge concerning the inadequacy of these plan comparisons, Plaintiff seeks leave from the Court to file a Third Amended Complaint ("TAC") to

---

[1] Plaintiff is not objecting to the Magistrate's Recommendations concerning her investment management fee claims in Counts II and IV of the SAC, but only to Counts I and III concerning RKA fees.

meet the Magistrate's addressable concerns about the SAC's RKA allegations and to withdraw her investment management fee claims. Plaintiff has attached a Third Amended Complaint ("TAC") for the Court's consideration as Exhibit A.

**First**. Plaintiff objects to the Magistrate's recommendation that the excessive RKA fee allegations in the SAC be dismissed for failing to state a claim. For the same reason that *Nohara et al. v. Prevea Clinic Inc. et al.*, Case No. 20-CV-1079-WCG-SCD, Magistrate Report and Recommendation, Dkt. 96 (E.D. Wis. July 21, 2023) (attached hereto as Exhibit B) and *Glick v. ThedaCare Inc. et al.,* Case No. 20-CV-1236-WCG-SCD, Magistrate Report and Recommendation, Dkt. 72 (E.D. Wis. July 20, 2023) (attached hereto as Exhibit C), survived motions to dismiss according to Magistrate Dries, so should this case with regard to the excessive RKA fee claims.

The Magistrate recommends dismissal of Plaintiff's RKA claims based on the following reasons: (1) "the average asset size of the Matthews International plan was less than $200 million, and only two of the thirteen comparator plans fit within Cotter's definition of a large plan. The complaint, however, does not contain any allegations about the recordkeeping services of plans with fewer than $250 million in assets or plans with more than $500 million in assets," *Magistrate Rep.*, at 11; (2) "[t]he smallest plans had just 508 participants and barely $13 million in assets; the Matthews International plan averaged about 4,000 participants and nearly $200 million in assets; and the largest plans had nearly 10,000 participants and over $2 billion in assets," *Id.* at 12; and (3) "[s]he compares the average fee the Matthews International plan paid over five years (2014 to 2018) with the fees paid by the comparator plans in just one year (usually 2018)." *Id.*

As an initial matter, Plaintiff believes the Magistrate's criticisms do not take into account the relevant allegations in the SAC. First, Plaintiff specifically alleges in the SAC that participant numbers are the primary driver of RKA fees, not asset size. ECF No. 50, ¶ 57 ("The underlying cost to a recordkeeper of providing recordkeeping to a defined contribution plan *is primarily dependent on the number of participant accounts in the Plan rather than the amount of assets in the Plan*.") (emphasis added).

Second, with regard to participant size, the fact that four smaller plans pay significantly less in RKA fees than the Matthews International Plan does supports the inference that the Matthews Plan paid excessive amounts for RKA. ECF No. 50, ¶ 94. Similarly, the nine same-sized or larger plans also paid significantly less than the Matthews International Plan, supporting Plaintiff's allegation that "some initial bids for the Bundled RKA services would be below the trend line and others would be above the trend line. Ultimately, a prudent plan fiduciary should be able to negotiate a Bundled RKA fee lower than the trend line such that the total RKA fee would be proximate to the trend line." *Id.* ¶¶ 94, 98. Third, although it is true that Plaintiff compares the average of RKA fees paid by the Matthews International Plan to one year (2018) for the comparator plans, she also alleges in the SAC that "[b]y the start of, and during the entire Class Period, the level of fees that recordkeepers have been willing to accept for providing RKA has stabilized, and has not materially changed for large plans, including the Matthews International Plan. In other words, reasonable recordkeeping fees paid in 2018 are representative of the reasonable fees during the entire Class Period." ECF No. 55, ¶ 56. With these concerns appropriately addressed, Plaintiff's trend line can be used to derive a reasonable fee, and she therefore has a plausible basis to allege that the plan's RKA fees were excessive relative to the services rendered to the Plan.

Just as importantly, in *Nohara,* Magistrate Dries also found that "[w]hile I agree that the method used to arrive at these estimated per-participant fees is suspect—and would probably fail to carry the case at summary judgment—for now, the fact that plans twice Prevea's size paid significantly less than Prevea in total annual bundled RKA fees nudges plaintiffs' claim that Prevea Plan participants paid higher fees over the plausibility line." *See Nohara*, Dkt. 96, at 7. Similarly, in *Glick*, the Magistrate stated that "[i]t remains unclear how Glick came up with some of his numbers, particularly the total recordkeeping and administrative fees he says the ThedaCare plan paid Transamerica each year. If Glick had presented the same evidence in response to a summary judgment motion, I would grant the

motion. However, the pleading stage is not the time to attack the source of a plaintiff's allegations." *See Glick*, Dkt. 72, at 12.

All of the Magistrate criticisms of Plaintiff's numbers and comparators in this case fall squarely within the language of *Nohara* and *Glick* noted above. "[A]rgument regarding the sufficiency of the comparator plans is premature. At the pleading stage, plaintiffs should not be sent packing for not finding the perfect set of comparators without any access to discovery tools." *See Nohara*, Dkt. 96, at 7-8. Furthermore, dismissing this the RKA claims in this case is against the weight of cases that the Magistrate himself cites in both *Nohara* and *Glick* and indeed, "[d]enying this motion to dismiss would conform with an emerging pattern in the Seventh Circuit. Similar complaints around the circuit have survived motions to dismiss with nearly identical allegations." *See Nohara*, Dkt. 96, at 9-10 (citing *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022); *Mazza*, 2023 WL 3558156; *Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787 (W.D. Wis. Mar. 9, 2023); *Tolomeo v. R.R. Donnelley & Sons*, 2023 WL 3455301, at *4 (N.D. Ill. May 15, 2023)). This case is a similar case to *Nohara* and *Glick* with nearly identical allegations and should likewise survive Defendants' motion to dismiss with regard to the excessive RKA claims.

**Second**. In the alternative, even if the Court is not persuaded and concludes that Plaintiff has not yet pleaded a sound basis for comparison with regard to RKA fees, Plaintiff asks the she be given leave to address the Magistrate's concerns about her RKA comparison numbers, which can be readily satisfied through a TAC. In recommending the RKA claims be dismissed with prejudice, the Magistrate observed that, "[b]ecause Cotter has already been given two chances to amend, and because she did not seek leave to amend again in response to the defendants' motion, I recommend that the court dismiss Cotter's claims with prejudice." *Magistrate Rep.*, at 2. However, this Court has recently set out the proper analysis with regard to permitting further amendment of a complaint:

> After the opportunity to amend the pleadings as a matter of course has passed, a party may amend a complaint only with the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). *Generally, motions to amend pleadings are treated favorably under Rule 15's liberal amendment policy. Id. Leave to amend should be "freely given,"* absent

considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Nohara v. Prevea Clinic Inc.*, 2022 WL 1504925, at *1 (E.D. Wis. May 12, 2022) (emphasis added). This Court went on to permit a TAC in the *Nohara* matter even over the Defendants' futility and prejudice arguments and even though, as here, it was the fourth version of that complaint:

> Defendants also assert that the proposed amendment would be futile and that Plaintiff's undue delay in seeking amendment is prejudicial. An amendment is futile if the amended pleading would not survive a motion to dismiss. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). But "[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). In this case, the Court is not certain that any amendment would be futile.

*Id.* at *2 (emphasis in original). Given Rule 15's liberal amendment policy, this Court granted the plaintiff's motion to amend in *Nohara*. *Id.*

Likewise, *Nohara* should apply equally here with regard to granting leave to the file the TAC. Plaintiff's attached TAC would in no way be futile, as it addresses each of the Magistrate's concerns, including: (1) the average asset size of the Matthews International Plan and comparator plans (TAC, ECF No. 66-1, ¶¶ 55, 83); (2) the size of Matthews International Plan and comparator plans with regard to participant size (*Id.*, ¶ 83); and (3) no longer using Matthews International Plan average fees to make plan comparisons (*Id.*, ¶¶ 84-85). The TAC also simplifies the case by removing all mention of investment management fee claims.

Not only is the TAC not futile, but it is also not prejudicial to Defendants. Although this case has been pending for three years, there has been no discovery and the delay in the proceedings is no fault of Plaintiff. Rather, it is because "[p]art of the reason that this case has weathered so many dismissals and amendments is that the pleading standard for ERISA has evolved drastically since the case's initial filing in July 2020." *See Nohara*, Dkt. 96, at 3. Like *Nohara*, this case was also filed in July

2020. Dkt. 1. Thus, if the Court decides to adopt the Magistrate's Recommendations, because of Rule 15's liberal amendment policy and the lack of futility and prejudice, the Court should grant leave to Plaintiff to file the attached TAC to specifically and solely address concerns the Magistrate had with the SAC in this case with regard to excessive RKA fees.

## **CONCLUSION**

For all the above reasons, Plaintiff partially objects to the Magistrate's Report and Recommendation and respectfully requests that Defendants' motion to dismiss should be denied with regard to Plaintiff's excessive RKA claims. In the alternative, Plaintiff respectfully requests that the Court grant leave for Plaintiff to file the attached Third Amended Complaint to meet the concerns addressed by the Magistrate in his Report and Recommendation.

Dated this 30th day of August, 2023

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

**s/ *Paul M. Secunda***
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127

WALCHESKE & LUZI, LLC
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com