**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| Deborah Cotter, individually, and as a representative of a Class of Participants and Beneficiaries, on Behalf of the Matthews International Corporation 401(k) Plan,<br><br>                    Plaintiff,<br><br>        vs.<br><br>Matthews International Corporation, *et al.*,<br><br>                    Defendants. | CASE NO. 20-CV-1054<br><br>JUDGE WILLIAM C. GRIESBACH |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PARTIAL OBJECTION TO
MAGISTRATE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS**

**REED SMITH LLP**

Steven Cooper
Sam Kadosh
599 Lexington Avenue
New York, NY 10022
Tel: 212-521-5400
Fax: 212-521-5450
Email: scooper@reedsmith.com
Email: skadosh@reedsmith.com

**HUSCH BLACKWELL LLP**

Ann M. Maher (Wisc. Bar ID No. 1000529)
511 North Broadway
Suite 1100
Milwaukee, WI 53202
Tel: 414-273-2100
Fax: 414-223-5000
Email: ann.maher@huschblackwell.com

*Attorneys for Matthews International Corporation, the Board of Directors of Matthews International Corporation, and the Pension Board of Matthews International Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................ 2

    A.    Relevant Allegations ................................................................ 2

    B.    Procedural History ................................................................. 3

LEGAL STANDARD .......................................................................... 5

ARGUMENT ................................................................................... 6

I.    The Magistrate Judge Correctly Recommended that the SAC Should be Dismissed ........ 6

    A.    The Magistrate Judge Correctly Reasoned that Plaintiff Did Not Plausibly Allege that Matthews Paid Unreasonably High Recordkeeping Fees ................... 6

    B.    Additional Disparities Between the Matthews Plan and Plaintiff's Purported Comparators Warrant Dismissal ................................................. 9

II.    Plaintiff's Attempt to Amend the SAC is Improper and Futile. ...................... 12

    A.    Plaintiff's Proposed Amendment is Improper and Untimely ..................... 12

    B.    Plaintiff's Proposed Amendments Are Futile ................................. 14

CONCLUSION ................................................................................ 16

Case 1:20-cv-01054-WCG   Filed 09/20/23   Page 2 of 22   Document 67

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ........................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................5

*Divane v. Northwestern University*,
953 F.3d 980 (7th Cir. 2020) .............................................................................4

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................................1, 5, 9

*Fritton v. Taylor Corp.*,
No. 22-cv-00415, 2022 U.S. Dist. LEXIS 222996 (D. Minn. Dec. 12, 2022) .......................12

*Glick v. ThedaCare Inc. et al.*,
Case No. 20-CV-1236-WCG-SCD, Dkt. 72 (E.D. Wis. July 20, 2023)...................................9

*Gonzalez v. Northwell Health, Inc.*,
No. 20-CV-3256, 2022 U.S. Dist. LEXIS 180110 (E.D.N.Y. Sep. 30, 2022).........................12

*Hughes v. Northwestern Univ.*,
142 S. Ct. 737 (2022) .....................................................................................4, 6

*Hughes v. Northwestern Univ.*,
63 F.4th 615 (7th Cir. 2023) .......................................................................6, 9, 16

*JMS Dev. Co. v. Bulk Petro. Corp.*,
No. 1:95-CV-3275, 2020 U.S. Dist. LEXIS 4191 (N.D. Ill. Jan. 10, 2020)...........................12

*Jones v. Dish Network Corp.*,
Civil Action No. 22-cv-00167-CMA-STV, 2023 U.S. Dist. LEXIS 52890 (D.
Colo. Jan. 31, 2023) ...........................................................................................6

*Lucero v. Credit Union Ret. Plan Ass'n*,
No. 22-cv-208-jdp, 2023 U.S. Dist. LEXIS 40702 (W.D. Wis. Mar. 9, 2023) .......................9

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
935 F.3d 573 (7th Cir. 2019) ............................................................................13

*Mateya v. Cook Grp. Inc.*,
No. 1:22-cv-01271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838 (S.D. Ind.
June 16, 2023) .................................................................................................11

*Mator v. Wesco Distribution*,
No. 2:21-CV-00403-MJH, 2022 U.S. Dist. LEXIS 147802 (W.D. Pa. Aug. 18, 2022) ................................................................................................................8

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ..........................................................................6

*Mazza v. Pactiv Evergreen Servs.*,
No. 22 C 5052, 2023 U.S. Dist. LEXIS 86826 (N.D. Ill. May 18, 2023) ..............9

*Miller v. Packaging Corp. of Am., Inc.*,
No. 1:22-cv-271, 2023 U.S. Dist. LEXIS 55337 (W.D. Mich. Mar. 30, 2023).......7

*Nohara et al. v. Prevea Clinic Inc. et al.*,
Case No. 20-CV-1079-WCG-SCD, Dkt. 96 (E.D. Wis. July 21, 2023)............9, 14

*Nohara v. Prevea Clinic Inc.*,
No. 20-CV-1079-WCG-SCD, 2022 U.S. Dist. LEXIS 207439 (E.D. Wis. Oct. 27, 2022) .............................................................................................................14

*O'Brien v. Vill. of Lincolnshire*,
955 F.3d 616 (7th Cir. 2020) ........................................................................13

*Orgone Capital III, LLC v. Daubenspeck*,
912 F.3d 1039 (7th Cir. 2019) ......................................................................15

*Probst v. Eli Lilly & Co.*,
No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS 19172 (S.D. Ind. Feb. 3, 2023) .................................................................................................... *passim*

*Sigetich v. Kroger Co.*,
No. 1:21-cv-697, 2023 U.S. Dist. LEXIS 40359 (S.D. Ohio Mar. 9, 2023)............7

*Singh v. Deloitte LLP*,
No. 21-CV-8458 (JGK), 2023 U.S. Dist. LEXIS 6910 (S.D.N.Y. Jan. 12, 2023) ................................................................................................................11

*Tolomeo v. R.R. Donnelley & Sons, Inc.*,
No. 20-cv-7158, 2023 U.S. Dist. LEXIS 85022 (N.D. Ill. May 15, 2023)..............9

*United States v. Melgar*,
227 F.3d 1038 (7th Cir. 2000) ...................................................................5, 13

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ........................................................................10

**Statutes**

28 USCS § 636 (b)(1) ............................................................................................5

**Rules**

F.R.C.P. Rule 12(b)(6) .......................................................................................5, 10

F.R.C.P. Rule 15(a)(1)(B) ...................................................................................3, 13

**Other Authorities**

Department of Labor, at 27, available at
    https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-
    administration-and-compliance/reporting-and-filing/form-5500/2018-
    instructions.pdf...........................................................................................10

U.S. Dep't of Labor, A Look at 401(k) Plan Fees 3 (Sept. 2019),
    https://www.dol.gov/sites/dolgov/files/ebsa/ aboutebsa/our-activities/resource-
    center/publications/a-lookat-401k-plan-fees.pd......................................................10

## PRELIMINARY STATEMENT

In recommending that this Court reject Plaintiff's third attempt, over a two-and-a-half-year span, to plead a cognizable claim for breach of a fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), Magistrate Judge Dries offered a thorough and well-reasoned analysis of the many failings of Plaintiff's pleadings.

The Magistrate correctly concluded that Plaintiff's claims premised on allegedly excessive recordkeeping fees were not viable because: (1) the Second Amended Complaint provided no basis to conclude that recordkeeping services available to the other retirement plans, offered by Plaintiff for comparison, were comparable to those services available to the Matthews' 401(k) plan (the "Matthews Plan"); (2) the comparator retirement plans were too dissimilar in asset and membership size to be used as baselines to compare the reasonableness of the Matthews Plan's recordkeeping fees; and (3) Plaintiff impermissibly compared the recordkeeping fees of comparator plans for a single year against the average fees paid by the Matthews Plan over a five-year span. And, respecting Plaintiff's claims that Matthews breached its duty of prudence by offering high-cost investment management funds, the Magistrate concluded that these claims were virtually identical to the claims dismissed by the Seventh Circuit in *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022), as both simply alleged that cheaper alternatives were available.

In only partially objecting to the Magistrate's Report and Recommendation, Plaintiff accepts that her investment management fee claims cannot survive in light of *Albert*. Instead, she attempts to keep her recordkeeping fee claims alive by offering a cursory and unpersuasive comparison of her case to inapposite claims that survived dismissal in *Albert*. Plaintiff also offers up yet another amended complaint to cure the clear deficiencies of the Second Amended Complaint; however, Plaintiff's proposed *Third* Amended Complaint offers much of the same. It still makes impermissible comparisons between a single year of fees for comparator plans against

the average of several years of fees paid by the Matthews Plan, and ultimately confirms that Matthews' prudent decision-making resulted in reasonable recordkeeping fees in line with the other plans.

This case is now over three years old and has been marked only by Plaintiff's repeated failures to bring a viable complaint. Significant resources have been expended by Matthews. The Court should reject Plaintiff's request to offer a fourth complaint that is materially comparable to the last complaint. The Court should adopt the Magistrate's Report and Recommendation and dismiss Plaintiff's claims with prejudice.

## **BACKGROUND**

### A.     Relevant Allegations

Plaintiff alleges that she participated in the Matthews Plan after she became employed by Matthews in approximately January 2018. Second Amended Complaint ("SAC"), ECF No. 50, ¶ 21. Defendants Matthews International Corporation, the Board of Directors of Matthews International Corporation and the Pension Board of Matthews International Corporation ("Pension Board") (collectively, "Matthews") are alleged to be ERISA fiduciaries for a 401(k) defined contribution pension plan (the "Matthews Plan") in which Plaintiff participated. *Id.* ¶¶ 5, 27.

Large 401(k) plans, defined as a plan with "between $250 million and $500 million in assets," *id.* ¶ 25, hire service providers to deliver retirement plan benefits to employees, including "recordkeeping" services that deliver administrative services "through standard, bundled offerings of the same level and quality." *Id.* ¶¶ 39-40. Plaintiff claims that "[f]or large plans . . . any minor variation in the level and quality of [recordkeeping] services . . . has little to no material impact on the fees charged by recordkeepers." *Id.* ¶ 44.

Within the relevant timeframe of the SAC, the Matthews Plan received recordkeeping services from PNC Bank ("PNC") and Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiff claims

that the fees paid to PNC and Wells Fargo were unreasonably excessive, first alleging that "based upon the best publicly available information," the average recordkeeping fees paid by the Matthews Plan between 2014 and 2018 was $124 per plan participant. *Id.* ¶ 92. Plaintiff then compares this rate to the 2018 fees paid by thirteen purportedly comparable plans. *Id.* ¶ 94. Extrapolating from these 2018 rates, Plaintiff concludes that a plan the size of the Matthews Plan would pay approximately $49 per participant for recordkeeping fees. *Id.* ¶ 95.

Between 2014 and 2018, the Matthews Plan had an average of 3,814 participants and an asset size of $189 million. *Id.* ¶ 94. The number of participants in Plaintiff's comparator plans for 2018 ranged from 508 to 9,922, and the asset size of these plans ranged from $13 million to $2 billion. *Id.*

### B.    Procedural History

Plaintiff filed her first putative class action Complaint on July 13, 2020, in which she asserted two counts. *See* ECF No. 1. Count I was for breach of fiduciary duty and Count II was for failure to adequately monitor other fiduciaries relative to the breaches alleged in Count I. Defendants filed a motion to dismiss the original Complaint on September 11, 2020.

After the motion to dismiss was filed, Plaintiff filed an Amended Complaint, pursuant to F.R.C.P. Rule 15(a)(1)(B) on September 25, 2020. The Amended Complaint alleged a putative class action and asserted four counts. Counts I and II alleged a breach of fiduciary duty, based on: (i) selecting a recordkeeper that charged excessive fees, ECF No. 17 at ¶¶ 88-115; (ii) offering unreasonably expensive share classes, *id.* at ¶¶ 127-166; (iii) offering an improper mix of investments, *id.* at ¶¶ 167-195; and (iv) failing to fully disclose fees, *id.* at ¶¶ 196-210. Counts III and IV were derivative of Counts I and II, and premised liability upon an alleged failure by Matthews to adequately monitor other fiduciaries relative to the breaches of fiduciary duty alleged in Counts I and II. *See id.* at ¶¶ 249-262.

Defendants moved to dismiss the Amended Complaint on October 23, 2020, ECF No. 23, and the motion was fully briefed on December 4, 2020.

On September 30, 2021, this Court entered an order staying the proceedings pending an anticipated decision by the U.S. Supreme Court in *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022)*, which was expected to address issues raised by Matthews' motion. ECF No. 34. On January 24, 2022, the Supreme Court decided *Hughes*, reversing the Seventh Circuit's decision in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020) on narrow grounds.

Following the decision in *Hughes*, this Court directed the parties to file supplemental briefs addressing the impact of the decision. *See generally* ECF No. 38. Approximately six months after the parties submitted their filings related to *Hughes*, and while the second motion to dismiss was pending, Plaintiff filed a "Rule 7(h) Expedited Non-Dispositive Motion for Leave to File Second Amended Complaint." ECF No. 41. Plaintiff's Second Amended Complaint largely tracked the allegations in the Amended Complaint. It alleges two counts of breach of the duty of prudence, one stemming from alleged excessive recordkeeping fees (Count I), and one stemming from allegedly excessive investment management fees—including the choice of share class and the cost of the underlying investments (Count II). SAC ¶¶184-207, and two counts alleging a breach of the duty to monitor other fiduciaries related to the same breaches as Counts I and II. SAC ¶¶ 208-221.

Matthews filed its third motion to dismiss on December 15, 2022, ECF No. 51, which was referred to Magistrate Judge Stephen Dries. On August 9, 2023, Judge Dries issued his Report and Recommendation, ECF No. 63 (the "R&R"), recommending that this Court dismiss the SAC in its entirety with prejudice. On August 30, 2023, Plaintiff filed a "Partial Objection to Magistrate's Report and Recommendation to Grant Defendants' Motion to Dismiss, and in the Alternative Motion for Leave to File Third Amended Complaint." ECF. No. 66 (the "Objection" or "Obj.").

Plaintiff only raised objections to the Magistrate's recommendation that her recordkeeping claims (*i.e.* Counts I and III) be dismissed, and expressly did not object to the Magistrate's recommendation to dismiss her investment management fee claims (*i.e.* Counts II and IV).  Obj. at 1, n. 1.  Plaintiff filed a proposed Third Amended Complaint ("TAC") as Exhibit A to her Objection.  ECF No. 66-1.  The TAC removes Plaintiff's investment management fee claims but is otherwise substantially similar to the SAC.  Notably, the TAC removes any definition of what constitutes a "large" retirement plan and reduces the number of comparator retirement plans from thirteen to seven. TAC ¶ 23; *id.* at 19-20.

## LEGAL STANDARD

In ruling on an objection to a Report and Recommendation by a U.S. Magistrate Judge pursuant to 28 USCS § 636 (b)(1), a district court's review of the Magistrate's recommendation is *de novo,* although "district courts should not consider arguments not raised initially before the magistrate judge."  *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the ERISA class action context challenging a fiduciary's decision, a motion to dismiss is an "important mechanism for weeding out meritless claims."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Courts apply a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats."  *Id.* "[T]he circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Albert,* 47 F.4th at 575 (quoting *Hughes*, 142 S. Ct. at 742).  Where there is an "obvious alternative explanation that suggests an ERISA fiduciary's conduct falls within the range of reasonable

judgments a fiduciary may make based on her experience and expertise," the plaintiff must demonstrate that the alternative explanation does not account for defendant's conduct. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 629 (7th Cir. 2023).

## ARGUMENT

### I. The Magistrate Judge Correctly Recommended that the SAC Should be Dismissed

#### A. The Magistrate Judge Correctly Reasoned that Plaintiff Did Not Plausibly Allege that Matthews Paid Unreasonably High Recordkeeping Fees

The Magistrate recommended dismissal of Plaintiff's recordkeeping fee claim because the Plaintiff did not plausibly allege that other plans comparable to the Matthews Plan charged lower fees for equivalent service.

*First,* the Magistrate noted that Plaintiff's fee comparison was not "apples to apples" because she compared the average fee of the Matthews Plan over five years (2014 to 2018) with the fees paid by the comparator plans over just one year. R&R at 12 (citing *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022); *Jones v. Dish Network Corp.*, Civil Action No. 22-cv-00167-CMA-STV, 2023 U.S. Dist. LEXIS 52890, at *26 (D. Colo. Jan. 31, 2023)). The Magistrate further noted that the Matthews' Plan "significantly reduced its recordkeeping fees over those five years" and that an "obvious alternative explanation" to Plaintiff's breach of duty theory "is that the fiduciaries' process resulted in lower recordkeeping fees throughout the relevant time period." R&R at 13.

In response, Plaintiff admits that the SAC attempts to compare the average cost of the Matthews Plan's recordkeeping fees over a five-year period with only a single year (2018) for comparator plans. Obj. at 3. Plaintiff argues, however, that this this discrepancy is immaterial because the SAC alleges that the fees that recordkeepers were willing to accept over the course of the class period "stabilized" and did not materially change, and therefore the "reasonable

recordkeeping fees paid in 2018 are representative of the reasonable fees during the entire Class Period." Obj. at 3. But this unsupported allegation is belied by the SAC's own claims that the fees the Matthews Plan paid throughout the class period fell precipitously, from $207 to $62 per person, between 2014 to 2018, and the fact that Plaintiff's own comparators' fees for 2018 range widely between $33 and $73 per person. *See* SAC ¶¶ 92, 94; *cf. Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS 19172, at *35 (S.D. Ind. Feb. 3, 2023) (Plaintiff's "own chart indicates that the 13 comparator plans paid between $23 to $39 per participant, reflecting . . . variation in price.").

*Second,* the Magistrate recognized that while Plaintiff alleged that all "large" plans – defined in the SAC as those with between $250 million and $500 million in assets – receive standardized recordkeeping and administrative services, and that "any minor variations [in service] do not materially affect the fees charged," the average asset size of the Matthews Plan was *less than $200 million*, and it therefore cannot be compared to "large" plans with allegedly standardized recordkeeping fees. R&R at 11. The Magistrate similarly observed that Plaintiff's comparators "vary significantly in size, with the "smallest plans ha[ving] just 508 participants and barely $13 million in assets"; Matthews' plan averaging "about 4,000 participants and nearly $200 million in assets", and the largest plans having "nearly 10,000 participants and over $ 2 billion in assets." *Id.* at 12. The Magistrate Judge reasoned that "[b]ecause the comparator plans are not similarly sized, [Plaintiff's] trend line cannot be used to derive a reasonable fee." *Id.* (citing *Miller v. Packaging Corp. of Am., Inc.*, No. 1:22-cv-271, 2023 U.S. Dist. LEXIS 55337, at *18 (W.D. Mich. Mar. 30, 2023); *Sigetich v. Kroger Co.*, No. 1:21-cv-697, 2023 U.S. Dist. LEXIS 40359, at *24 (S.D. Ohio Mar. 9, 2023); *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS

19172, at *35-36 (S.D. Ind. Feb. 3, 2023); *Mator v. Wesco Distribution*, No. 2:21-CV-00403-MJH, 2022 U.S. Dist. LEXIS 147802, at *24-25 (W.D. Pa. Aug. 18, 2022)).

Plaintiff does not dispute any of the Magistrate's criticisms of its method of comparison; rather she argues that this Court should ignore these shortcomings. Plaintiff disparages the Magistrate's focus on the disparity in the comparators' asset size, rather than number of plan members, and argues that the SAC alleges that plan membership primarily drives recordkeeping fees. Obj. at 2-3. In the next breath, however, Plaintiff concedes that the Magistrate had in fact pointed to the disparity in the number of plan members between the Matthews' Plan and Plaintiff's comparator plans in concluding that Plaintiff could not derive a reasonable fee from these comparisons. *Id.* at 3; *see* R&R at 12. Plaintiff responds, conclusorily, that regardless of the disparities in the comparator plans, the fees paid by these dissimilar plans still "does supports [sic] the inference that the Matthews Plan paid excessive amounts for [recordkeeping fees]." Obj. at 12. Plaintiff simply ignores that the SAC only alleges that recordkeeping services were materially identical for all "large" 401(k) plans, *i.e.,* those holding assets between $250 million and $500 million. Without similar allegations for smaller plans (including the Matthews Plan), or plans above $500 million in assets, the SAC is "devoid of allegations as to the quality or type of recordkeeping services [for] the comparator plans provided" and Plaintiff "cannot proceed to discovery solely on the basis that the Plan paid higher recordkeeping fees than a potentially random assortment." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022).

Plaintiff focuses on two recent reports and recommendations issued by Magistrate Judge Dries, in other cases with recordkeeping fee claims, where the Magistrate recommended the claims should survive their respective motions to dismiss. But, as the Supreme Court admonished, district courts must apply "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the

plausible sheep from the meritless goats."  *Dudenhoeffer*, 573 U.S. at 425; *see also Hughes*, 63 F.4th at 634 (affirming that "[c]laims for excessive recordkeeping fees in a future case may or may not survive dismissal based on different pleadings and the specific circumstances facing the ERISA fiduciary."). These other decisions support the Magistrate's context-specific scrutiny that was applied in this case to conclude that Plaintiff's recordkeeping fee claim was a "goat."  While the Magistrate rejected motions to dismiss in *Nohara et al. v. Prevea Clinic Inc. et al.*, Case No. 20-CV-1079-WCG-SCD, Dkt. 96 (E.D. Wis. July 21, 2023)[1] and *Glick v. ThedaCare Inc. et al.*, Case No. 20-CV-1236-WCG-SCD, Dkt. 72 (E.D. Wis. July 20, 2023),[2] neither of the recommendations in those cases discussed the specific pleading deficiencies that the Magistrate identified with Plaintiff's SAC and described above.[3]  In any event, the defendants in each of those cases have objected to the Magistrates' recommendation and those objections are still pending before this Court.

### B. Additional Disparities Between the Matthews Plan and Plaintiff's Purported Comparators Warrant Dismissal

Although the Magistrate did not raise them in his Report and Recommendation (and it was not necessary to do so), at least two other disparities – raised by Matthews in its motion briefing – between the Matthews Plan and Plaintiff's comparators defeat any plausible inference that Matthews breached its fiduciary duties by paying unreasonably high recordkeeping fees.

---

[1] A copy of the Report and Recommendation in *Nohara* is attached as Exhibit B of Plaintiff's Objection.
[2] A copy of the Report and Recommendation in *Glick* is attached as Exhibit C of Plaintiff's Objection.
[3] The same is true for the other cases Plaintiff cites where recordkeeping fee claims survived motions to dismiss.  *See Mazza v. Pactiv Evergreen Servs.*, No. 22 C 5052, 2023 U.S. Dist. LEXIS 86826, at *15 (N.D. Ill. May 18, 2023); *Tolomeo v. R.R. Donnelley & Sons, Inc.*, No. 20-cv-7158, 2023 U.S. Dist. LEXIS 85022, at *12 (N.D. Ill. May 15, 2023); *Lucero v. Credit Union Ret. Plan Ass'n*, No. 22-cv-208-jdp, 2023 U.S. Dist. LEXIS 40702, at *12 (W.D. Wis. Mar. 9, 2023).

*First,* Plaintiff's allegations that 401(k) plans receive materially identical services from their recordkeepers are contradicted by the Form 5500s of the plans cited by Plaintiff.[4] These forms contain descriptor codes for the specific services provided by these comparator recordkeepers which vary from one to the other. For example, the Matthews Plan's 2018 Form 5500 lists, as services provided by Wells Fargo, "recordkeeping and information management" services (Code 15); "trustee" services (Code 21); and "participant loan processing" services (Code 37).[5] ECF No. 57-1 at 7 (Matthews Plan 2018 Form 5500). On the other hand, the 2018 Form 5500 for the Brown Rudnick LLP 401k Profit Sharing Plan A lists only "recordkeeping and information management" services (Code 15), and the Compass Health, Inc. 401(K) Profit Sharing Plan lists only "recordkeeping fees" (Code 64). *See* ECF No. 57-2 at 7 (Brown Rudnick 2018 Form 5500); ECF No. 57-3 at 11 (Compass Health 2018 Form 5500). Thus, according to Plaintiff's own incorporated documents, there is a wide variation in the types of services provided by recordkeepers, a fact confirmed by the Department of Labor, which notes that, "generally the more services provided [to 401(k) plan members], the higher the fees."[6] This makes it impossible to draw any reliable inferences about the reasonableness of the Matthews Plan's fees relative to those

---

[4] In addition to the allegations set forth in a complaint, the Court may consider documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice, when deciding a Rule 12(b)(6) motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013). On a motion to dismiss in the ERISA context, courts in this circuit routinely consider plans' annual Form 5500 filings and participant disclosures. *See Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS 19172, at \*36-37 (S.D. Ind. Feb. 3, 2023) ("Because [plaintiff] relies on the Form 5500s and provides information from them in her Amended Complaint, the Court finds it appropriate to consider them in ruling on the Motion to Dismiss.").

[5] *See* Instructions for Form 5500 (2018), Department of Labor, at 27, available at https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf.

[6] Indeed, the Department of Labor has explained that, beyond the "basic and necessary administrative services, such as plan recordkeeping, accounting, legal, and trustee services," a 401(k) plan may also offer its participants "a host of additional services, such as telephone voice response systems, access to customer service representatives, educational seminars, retirement planning software, investment advice, electronic access to plan information, daily valuation, and online transactions." U.S. Dep't of Labor, A Look at 401(k) Plan Fees 3 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/aboutebsa/our-activities/resource-center/publications/a-lookat-401k-plan-fees.pdf.

of the comparators. *Accord Mateya v. Cook Grp. Inc.*, No. 1:22-cv-01271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838, at *13 (S.D. Ind. June 16, 2023) ("A survey of the rest of the Form 5500s confirms the comparator plans paid for different services."); *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS 19172, at *38 (S.D. Ind. Feb. 3, 2023) (recognizing that variety of services performed by recordkeepers in comparators' Form 5500s rendered implausible allegation that all recordkeepers performed identical services).

*Second,* for each of the comparator plans, Plaintiff used the "direct compensation paid by the plan" listed in the Form 5500 as the measure of the recordkeeping fees. *Compare* SAC at 22 (Table of Comparable Plans' RK&A Fees) *with* ECF No. 57-2 at 7; *id.* ECF No. 57-3 at 11. For the Matthews Plan, however, Plaintiff did not use that amount listed on the Form 5500, but instead inflated the recordkeeping fees using an undisclosed formula, which Plaintiff claims, without further explanation, is "based upon the best publicly available information." SAC ¶ 92. This can be seen by comparing the 2018 Matthews Plan recordkeeping fee listed in the SAC ($62 per member) with the Plan's 2018 Form 5500 ($55.67 per member). *Compare* SAC at 21 (Table of Matthews Plan fees) *with* ECF No. 57-1 (Matthews Plan 2018 Form 5500) at 7. This is another sleight-of-hand by Plaintiff to manufacture the conclusion it seeks by using the recordkeeping fees listed in the Form 5500 for the comparator plans while calculating the Matthews Plan recordkeeping fees using an undisclosed formula, which conveniently, lists a higher recordkeeping fee than the one in Matthews' Form 5500.

Courts routinely dismiss excessive recordkeeper fee claims for precisely the same inconsistency. *See Singh v. Deloitte LLP*, No. 21-CV-8458 (JGK), 2023 U.S. Dist. LEXIS 6910, at *15-16 (S.D.N.Y. Jan. 12, 2023) (internal citations omitted) ("[T]he plaintiffs' comparison is disingenuous because it compares the combined direct and indirect costs of the 401(k) Plan to only

the direct costs of the comparator plans. . . . Because the plaintiffs' comparison does not compare apples to apples, the comparison fails to indicate plausibly imprudence on the part of the defendants."); *Fritton v. Taylor Corp.*, No. 22-cv-00415, 2022 U.S. Dist. LEXIS 222996, at *23-*24 (D. Minn. Dec. 12, 2022) (dismissing claim for excessive recordkeeping fees where plaintiff compared direct fees listed on Form 5500 to direct and indirect fees paid by defendant); *Gonzalez v. Northwell Health, Inc.*, No. 20-CV-3256, 2022 U.S. Dist. LEXIS 180110, at *31 (E.D.N.Y. Sep. 30, 2022) ("Without a sufficient allegation that the total fees paid by Plan participants are higher or lower than the total fees paid by a smaller comparator, plaintiff has failed to plausibly allege that defendants breached their fiduciary duties by allowing the Transamerica fees plaintiff alleges.").

Thus, there is ample reason – even in addition to the reasons given by the Magistrate – to overrule Plaintiff's objections to the Report and Recommendation and dismiss the SAC with prejudice.

## II. Plaintiff's Attempt to Amend the SAC is Improper and Futile.

Rather than offer any robust opposition to the Report and Recommendation, Plaintiff instead impermissibly uses its Objection as an opportunity to try to seek leave to amend the SAC in the hopes that its fourth complaint is the charm.

### A. Plaintiff's Proposed Amendment is Improper and Untimely

Plaintiff's use of her Objection to seek leave to amend the SAC is impermissible. As the Magistrate Judge noted, Plaintiff did not seek leave to amend the SAC in response to Matthews' motion to dismiss *or* respond to Matthews' argument that dismissal should be granted with prejudice. R&R at 17. "Arguments not made before a magistrate judge are waived and 'district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases . . . is *de novo*.'" *JMS Dev. Co. v. Bulk Petro. Corp.*, No. 1:95-CV-3275, 2020

U.S. Dist. LEXIS 4191, at \*5 (N.D. Ill. Jan. 10, 2020) (quoting *Melgar*, 227 F.3d at 1040); *see also, e.g., O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 632 (7th Cir. 2020) (affirming dismissal with prejudice where plaintiff responded to motion without seeking leave to amend). Plaintiff's time to seek amendment of her complaint has passed.

Even if Plaintiff had not waived her ability to seek leave to amend, the Court should still reject the attempt to file a fourth pleading at this late hour. "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 582 (7th Cir. 2019) (internal quotations omitted). Plaintiff's request to file a fourth complaint is, at the very least, the result of undue delay and repeated failures to cure the deficiencies in her previous pleadings.

Plaintiff has filed three complaints in this matter, the second pursuant to Rule 15(a)(1)(B) in response to Matthews' first motion to dismiss, *see* ECF No. 17, and the third in response to the Seventh Circuit's opinion in *Albert* (and *after* Matthews' second motion to dismiss was fully briefed). *See* ECF No. 41. As a result, Matthews has been compelled to file three substantial motions to dismiss. Over three years, Plaintiff has had more than ample opportunity to consider the deficiencies in her claims, as well as the applicable case law governing those claims. As one example, in its motion to dismiss Plaintiff's Amended Complaint, Matthews raised the argument that Plaintiff was improperly comparing the average of Matthews' recordkeeping fees over a five-year period to a single year's worth or fees for the comparator plans. *See* ECF No. 24 at 9. Plaintiff did not correct this discrepancy in the SAC. Defendants spent considerable sums responding to these three deficient pleadings, and the Court should reject Plaintiff's belated attempts to make these and other corrections when she had the opportunity to do so. *Accord Probst,* 2023 U.S. Dist.

LEXIS 19172, at *49 n.10 (declining to allow opportunity to amend after plaintiff had "already amended her complaint in response to an earlier motion to dismiss").[7]

## B.    Plaintiff's Proposed Amendments Are Futile

In any event, Plaintiff's proposed Third Amended Complaint does nothing to correct the deficiencies in the SAC.  First, Plaintiff claims that she is "no longer using the Matthews International Plan average to make plan comparisons," Obj. at 5, but a cursory review of the TAC shows this to be disingenuous.  Although Plaintiff replaces the Matthews Plan's recordkeeping fee average with the purported 2018 fee on her chart of comparators, TAC at 19, she *still* attempts to compare the 2018 recordkeeping fees of comparator plans to the Matthews Plan's fees from 2014 through 2021, without providing year-over-year comparisons to plausibly claim that Matthews was paying excessive fees during this period.  *See id.* at 20.  If anything, the TAC only makes clearer that Plaintiff has no proper comparators to sustain its claims.

Moreover, Plaintiff attempts to address the Magistrate's criticisms only by further removing context from her allegations. For example, the Magistrate criticized the SAC for alleging that "large" 401(k) plans – defined in the SAC as those managing between $250 million and $500 million – received materially identical recordkeeping services, while comparing plans with significantly fewer assets and significantly more assets without any claim that recordkeeping services for such plans are standardized.  R&R at 11.  In response to this, Plaintiff simply strips out her definition of "large" 401(k) plans.  *Compare* SAC ¶ 25 *with* TAC ¶ 23.  In doing so, however, Plaintiff entirely unmoors her analysis from any discernable metric with which to

---

[7] Plaintiff's reference to the procedural history in *Nohara*, where this Court allowed plaintiffs to file a third amended complaint is misleading.  There, plaintiffs sought to amend their pleadings "to respond to the *Albert* court's desire for further contextualization of their duty of prudence claims."  *Nohara v. Prevea Clinic Inc.*, No. 20-CV-1079-WCG-SCD, 2022 U.S. Dist. LEXIS 207439, at *16 (E.D. Wis. Oct. 27, 2022).  Plaintiff here has already had the opportunity to do so in the SAC, which was filed more than two months after the Seventh Circuit's decision in *Albert*.

compare plans. She still alleges that recordkeepers provide standard services to "large retirement plans," TAC ¶¶ 37-38, but without defining what constitutes large plans, the Court cannot possibly determine whether any given plan put forward by the Plaintiff, including the Matthews Plan, would receive these standardized services. Plaintiff lacks any basis to claim that the comparators offered in the TAC are "comparable" plans that would receive standard recordkeeping services, and Plaintiff's chart still shows plans with a wide range of participants (3,639 to 8,067) and assets ($99.8 million to $894.5 million). TAC at 19-20. The Court has no way to determine whether the alternative plans are meaningfully comparable to the Matthews Plan, with materially identical recordkeeping services, or are simply a "potentially random assortment" of plans provided by Plaintiff to prop up conclusory claims. *See Albert*, 47 F.4th at 579 (7th Cir. 2022).

Additionally, Plaintiff tries to save her case by offering a significantly stripped-down list of comparator plans compared to the SAC, removing plans with recordkeeping fees higher than the Matthews Plan, which undermines her assertion that the Matthews Plan's 2018 recordkeeping fees were unreasonably high. *Compare* TAC at 19-20 *with* SAC at 22. But "[a]n amended pleading does not operate as a judicial *tabula rasa*," *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019), and the Court is not required to simply ignore the fact that Plaintiff's previous allegations contained comparators that demonstrate that Matthews' 2018 recordkeeping fees were squarely within the range of reasonableness. This is especially true when the TAC still reflects an inflated 2018 fee calculation for the Matthews Plan of $65 – dubiously based on "best publicly available" information, TAC ¶ 81 – when, as discussed above, an apples-to-apples comparison of the "direct compensation paid by the plan" listed in Matthews 2018 Form 5500 (the metric used for all other comparator plans) would place that figure around $55. *See* ECF No. 57-1 at 7.

Ultimately, the TAC shows the same fatal fact contained within the SAC: that the Matthews' Plan significantly reduced recordkeeping fees over the class period, TAC ¶ 81, resulting in "the obvious alternative explanation . . . that the fiduciaries' process resulted in lower recordkeeping fees throughout the relevant time period." R&R at 13. As with the SAC, the proposed TAC fails to allege the "something more" "necessary to survive dismissal when there is an obvious alternative explanation that suggests an ERISA fiduciary's conduct falls within the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 63 F.4th at 629. The TAC, like its predecessors, would not survive a motion to dismiss; Plaintiff's request to amend her complaint for a third time should therefore be rejected.

## CONCLUSION

For all the foregoing reasons, the Magistrates' Report and Recommendation should be adopted, and this Court should dismiss the SAC in its entirety with prejudice, and without leave to amend.

Dated: September 20, 2023

Respectfully submitted,

**REED SMITH LLP**

Steven Cooper
Sam Kadosh
599 Lexington Avenue
New York, NY 10022
Tel: 212-521-5400
Fax: 212-521-5450
Email: scooper@reedsmith.com
Email: skadosh@reedsmith.com

**HUSCH BLACKWELL LLP**

/s/ *Ann M. Maher*
Ann M. Maher (Wisc. Bar ID No. 1000529)
511 North Broadway
Suite 1100
Milwaukee, WI 53202
Tel: 414-273-2100
Fax: 414-223-5000
Email: ann.maher@huschblackwell.com


*Attorneys for Matthews International Corporation, the Board of Directors of Matthews International Corporation, the Pension Board of Matthews International Corporation, and John Does 1-30*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Supplemental Memorandum was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 20th Day of September, 2023.

/s/ *Samuel Kadosh*
Samuel Kadosh